779 P.2d 815
**STATE of Arizona, Appellee,**

v.

**Jose MARQUEZ–SOSA, Appellant.**

**No. 1 CA–CR 88–684.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 12, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The issue on appeal is whether the trial court erred in suspending the imposition of a $137,000 fine and other conditions of probation contingent on defendant remaining outside the United States.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By information Jose Marquez–Sosa (defendant) was charged with second degree burglary, a class 3 felony, arising out of stealing $250 worth of jewelry and causing $258 damage. Defendant entered into a plea agreement with the state in which he agreed to plead guilty to attempted theft, a class 6 felony. At sentencing, the trial court suspended imposition of sentence and placed defendant on probation for three years. As conditions of probation, the court ordered that defendant serve one year in the county jail; pay a probation fee at the rate of $30 per month; pay a $100 felony assessment; participate and complete 400 hours in the Work Order Program; pay $258 restitution; pay a $137,000 fine; and lastly, not remain or return to the United States illegally. The court suspended all conditions other than the admonition to obey all laws, incarceration in jail and the prohibition not to remain or return to the United States illegally as long as defendant remained outside the United States.

Defendant timely appealed claiming "[t]he trial court improperly 'deported' [him] and fined him $137,000."

## DISCUSSION

Relying on *State v. Camargo*, 112 Ariz. 50, 537 P.2d 920 (1975), defendant argues that the trial court may not order defendant deported or forbid his entry into the United States. He claims the imposition of a fine of $137,000 is a decision that impermissibly controls defendant's entry into the United States. We disagree.

The federal government has exclusive authority over the deportation and entry of aliens into the United States. *Camargo*, 112 Ariz. at 52, 537 P.2d at 922, citing *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Nonetheless, a state court may order as a condition of probation that defendant comply with the law, federal, as well as state. *Carmargo*, 112 Ariz. at 52, 537 P.2d 922. Therefore, the trial court did not violate *Carmargo* by ordering that defendant refrain from remaining or entering the United States *illegally*. Furthermore, the court's suspension of the payment of the fine inures to defendant's benefit. *See State v. Ambalong*, 150 Ariz. 380, 723 P.2d 729 (App.1986); *State v. Tyree*, 109 Ariz. 259, 508 P.2d 335 (1973), *overruled on other grounds* by *State v. Lewis*, 109 Ariz. 466, 512 P.2d 9 (1973). Consequently, if we find the court properly imposed the fine, its suspension of payment coupled with its admonition that defendant obey the laws by not entering or remaining in the county illegally would not constitute error in this case.

We thus focus on the propriety of the $137,000 fine. Defendant fails to bring the issue of the amount of the fine squarely before the court. We are, however, required to search the record for fundamental error that prejudices defendant even if he failed to object at sentencing or properly raise the issue on appeal. A.R.S. § 13–4035; *State v. Sorrell*, 132 Ariz. 328, 645 P.2d 1242 (1982). Constitutional error is one form of fundamental error. *See State v. Burton*, 144 Ariz. 248, 697 P.2d 331 (1985). Both the United States and the Arizona Constitution protect defendants from punishment that is disproportionate to the crime committed by prohibiting the imposition of excessive fines. U.S. Const. Amend. VIII; Ariz. Const. art. II, § 15.[1] Furthermore, because inappropriate sen-

---

1. The United States Supreme Court has not specifically determined whether the "excessive fine" provision of the eighth amendment is specifically applicable to the states. Commentators note, however, that because the provision seems logically intertwined with other provisions of that amendment, it may have already been im- pliedly made applicable to the states. *See* J. Nowack, R. Rotunda & J. Young, *Constitutional Law* 413 (2d ed. 1983); Jeffries, *A Comment on the Constitutionality of Punitive Damages*, 72 Va.L.Rev. 139 (1986). In any case, our constitution specifically forbids the imposition of excessive fines.

tencing undermines the public's confidence in the fair administration of justice, we will consider the propriety of the amount of fine imposed.

A fine is a criminal penalty that constitutes a sentence. Rule 26.1, Arizona Rules of Criminal Procedure; *State v. Sheaves,* 155 Ariz. 538, 747 P.2d 1237 (App.1987). An appellate court will not disturb a lawful sentence [2] unless "it clearly appears that the sentence imposed is excessive, resulting in an abuse of discretion." *State v. Jerousek,* 121 Ariz. 420, 429, 590 P.2d 1366, 1375 (1979). The United States Supreme Court has recognized that, "[r]eviewing courts, of course, should grant substantial deference ... to the discretion that trial courts possess in sentencing convicted criminals. *But no penalty is per se constitutional.*" *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983) (emphasis added).

■ The Arizona Supreme Court, pursuant to its rule making power, has adopted the American Bar Association's Minimum Standards for Criminal Justice, Relating to Sentencing Alternatives and Procedures § 2.7(b) and (c) as follows:

(b) Whether to impose a fine in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, or conditions tailored to the means of the particular offender.

(c) In determining whether to impose a fine and its amount, the court should consider:

(i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to [the defendant's] other obligations;

(ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

(iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and

(iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant.

*In re Collins,* 108 Ariz. 310, 312–13, 497 P.2d 523, 525–26 (1972). Courts in other jurisdictions have determined that "to justify the court in interfering and setting aside a judgment for a fine authorized by statute, the fine imposed must be so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Naczas,* 8 Wis.2d 187, 98 N.W.2d 444, 445 (1959), quoting 24 C.J.S. *Criminal Law* § 1978.

In the present case, defendant stole jewelry worth $250 (most of which was recovered) and caused $258 damage when he broke an arcadia door. The presentence report indicates that defendant has no income or assets, has four small children and only fair prospects for employment. Although the report writer did recommend that defendant pay restitution in the amount of $258, she made no recommendation as to a fine. When the trial court imposed the fine, it stated:

That's in order to encourage you, frankly, not to come back here. And you are to pay that at the rate of $100 each month ... with the balance due in one lump one month before the expiration of probation.

The imposition of the fine here was for a purpose unrelated to any issues addressed by Rule 2.7(b) and (c). Obviously, it was intended as a deterrent to defendant reentering this country. Furthermore, the trial court's imposition of a $137,000 fine in this

---

**2.** Defendant entered into a plea agreement in which he pled guilty to attempted theft, a class 6 felony. The written plea agreement clearly indicated that a maximum fine of $150,000 plus a

37% surcharge could be levied against defendant. The fine the court imposed was obviously within the legal limit.

case serves no legitimate remedial purpose at all. The imposition of a fine of $137,000 for the crime of attempted theft resulting in a loss under $500 shocks this court, as we believe it would any member of the public. The trial court abdicated its duty to obey the mandates of our federal and state constitutions and ignored the rules outlined by our supreme court when it imposed such a fine.[3] We accordingly hold the fine imposed is excessive. Pursuant to our statutory authority we modify this condition of probation and void the fine. *See* A.R.S. § 13–4037(B).

Judgment affirmed; sentence modified.

BROOKS, J., concurs.

GERBER, Judge, dissenting in part; concurring in part.

I concur totally with the majority's conclusion that the $137,000 fine is excessive under the Eighth Amendment. According to the defendant's uncontested accounts, this defendant was in the United States via an immigration permit; he was not an illegal alien, despite suggestions to the contrary at sentencing. He had four children and a wife. At the time of his offense, he had no money for rent, was living off charity, and had neither a place to live nor any means to support his family. He broke a window and entered a house in search of something to sell to feed his family. The jewelry he took was valued at $250; the window he broke cost $258 to repair. He admitted his guilt to police, courts, and probation officer. He was charged and convicted of a Class 6 felony. He served 71 days in jail prior to sentencing. At sentencing, the pro tem judge imposed upon him a flat year of incarceration plus 400 hours of community service, plus the $137,000 fine.

Without condoning the clearly criminal behavior involved, I find the sentence imposed on this defendant not only excessive under the Eighth Amendment but also demeaning to our collective sense of fairness in punishment, which traditionally has been guided by a sense of proportionality to the

crime. I have not seen a clearer instance of a violation of the Eighth Amendment.

I dissent in part from the majority's conclusion regarding the effect of the fine as an immigration control device. The record admittedly is inconsistent and ambiguous. It indicates at one point that the sentencing judge said, "I'm going to insist that after you complete your jail time that you be deported." This "insistence" is beyond the authority of a sentencing judge, for authority to deport rests exclusively with the United States Immigration and Naturalization Service. Regarding defendant's potential to return to the United States, the record, again ambiguous, suggests a similar flaw. While there are indications both in the sentencing record and in term 19 of the probation form that this defendant is not to reenter the United States "illegally," there are other prohibitions on reentry, greater in number and vehemence, which are not qualified by the term "illegal." For example:

> "If you come back here again, you're going to face the wrath of this court.... You're going to go to prison."

> "The fine is suspended so long as you remain outside the U.S.A."

> "So long as you stay outside of the United States, you don't have to pay the fine...."

> "So long as you stay outside the United States, that's all you have to do. But if you come back here, the whole world will fall on you...."

In addition to these oral bans, term 20 on the probation form states that "all terms of probation except terms 1, 13, and 19 are suspended so long as you remain outside the U.S.A." Since the $137,000 fine is term 12, one must conclude that the fine is suspended only so long as this defendant remains outside the United States.

The message in these unqualified excerpts is that the fine of $137,000 need not be paid as long as the defendant stays outside the United States but is to be paid whenever he reenters the United States even legally. This excessive fine thus ap-

---

**3.** Because of our disposition, we need not reach the obvious equal protection and due process implications of the trial court's rationale for imposing the fine: the fact that defendant was an alien.

pears as an immigration barrier to reentry to the United States even for legitimate purposes. Using the fine for this purpose constitutes an abuse of authority for reasons already stated.

Finally, and regretably, one is compelled to comment upon the demeanor of the court in imposing sentence. The comments made by the sentencing judge include the following:

"If you come back here again, you're going to face the wrath of this court. You're going to go to prison. And what's more, if you ever take anything that doesn't belong to you again, you can expect to get the maximum prison sentence for it. That will not be tolerated here."

[Defendant] "I won't do it again. I haven't did it since then."

"Well, if you do, you can kiss the rest of your life away, Mr. Marquez, and you can kiss your family goodbye because you won't have them anymore. If you care about your family, then you demonstrate it by your conduct...."

"The United States Immigration Services indicates that they are going to deport you anyway. So the minute you get out of jail they are going to kick you out of the country, Mr. Marquez."

"So long as you stay outside of the United States, that's all you have to do. But if you come back here, the whole world will fall on you. If you think you had trouble before, Mr. Marquez, just come back, and you'll find out what trouble really means."

Sentencing judges need feel no reason to treat convicted defendants with the niceties of a formal tea party. Nonetheless, this intemperance brings the court itself into disrepute. While not grounds for reversal, this diatribe recalls Winston Churchill's observation that the truest barometer of a nation's claim to be civilized is its treatment of its criminals. This record, I fear, shows a falling barometer.