831 P.2d 417

**STATE of Arizona, Appellee,**

v.

**Nathaniel Nathan GATLIN, Appellant.**

**No. 1 CA–CR 90–1394.**

Court of Appeals of Arizona,
Division 1, Department D.

April 23, 1992.

where the facts show that taking the victim into custody was the only way to assure her presence at trial.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and John Pressley Todd, Asst. Atty. Gen., Phoenix, for appellee.

John William Rood, III, Phoenix, for appellant.

## OPINION

TAYLOR, Presiding Judge.

Nathaniel Nathan Gatlin ("appellant") was convicted on his pleas of guilty to one count of conspiracy to sell narcotic drugs, a class 2 felony, and one count of possession of narcotic drugs, a class 6 felony. Appellant was sentenced to five years intensive probation on the conspiracy count and to four years intensive probation on the possession count, with the sentences to be served concurrently. Appellant was ordered to serve one year incarceration in the Maricopa County Jail as a condition of probation. Appellant challenges this latter provision of his sentences.

## FACTS

On February 2, 1990, appellant was indicted on two counts of possession of a narcotic drug for sale, class 2 felonies, and one count of possession of marijuana, a class 6 felony. Appellant entered a plea agreement whereby he pled guilty to one count of conspiracy to sell narcotic drugs and one count of possession of narcotic drugs. The plea agreement provided that there was no agreement as to sentencing except that if appellant was granted probation, he would be required to serve one year, flat time, in the county jail. At sentencing, the court announced its intention to order shock incarceration and that such an order was a deviation from the terms of the plea agreement. Appellant and defense counsel acquiesced to the court's proposal. The State voiced no objection to the

deviation from the plea agreement. The court then placed appellant on intensive probation and ordered him to complete the 120–day shock incarceration program at the Department of Corrections, pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–915. The terms of probation as then imposed contained no provision requiring appellant to serve any county jail time. The sentencing judge advised appellant that should he be ineligible for the shock incarceration program or fail to complete it for any reason, he would be returned to court for resentencing.

Appellant failed to qualify for the shock incarceration program due to a medical disability. The trial court ordered a resentencing hearing at which time it formally found appellant ineligible for the shock incarceration program. Appellant's probation terms were modified to require that he serve one year, flat time, in the county jail, as set forth in the plea agreement.

At the resentencing hearing, appellant did not object to the modification of the terms of probation. Appellant's only objection was the assertion that the beginning date of his jail time should be his arrest date rather than the initial sentencing date. Following resentencing, appellant timely filed this appeal. The only issue raised on appeal is whether the trial court erred when it sentenced appellant to one year jail time after he failed to qualify for the shock incarceration program.

## DISCUSSION

### Waiver

■ The State argues that appellant's claim is waived by his failure to make an objection at the resentencing hearing. In support of its position, the State relies upon *State v. Clabourne*, 142 Ariz. 335, 690 P.2d 54 (1984). In *Clabourne*, the court stated that "a party's failure to make a timely objection to a sentencing procedure waives that point for appeal." *Id.* at 346, 690 P.2d at 65; *see State v. Bailey*, 120 Ariz. 399, 402, 586 P.2d 648, 651 (App. 1978). Even though a defendant fails to make an objection at sentencing, this court is still required to search the record for

error so fundamental that it prejudices the defendant. A.R.S. § 13–4035; *State v. Marquez–Sosa*, 161 Ariz. 500, 502, 779 P.2d 815, 817 (App.1989).

We believe the issue before us to be more than a challenge to a sentencing procedure. We deem the question of the trial court's authority to impose the length of sentence ordered herein to impact upon appellant's right to liberty. The right of personal liberty has been declared to be "a fundamental interest, second only to life itself, as an interest protected under both [state] and United States Constitutions." *In Re Roger S.*, 19 Cal.3d 921, 141 Cal. Rptr. 298, 569 P.2d 1286, 1289 (1977). We, therefore, address the issues raised by appellant.

### Modification of Probation

■ Appellant argues that the trial court improperly modified the terms of appellant's probation by imposing one year flat jail time after appellant was denied, due to medical reasons only, admission into the 120–day shock incarceration program. Appellant contends that because the 365 days of incarceration in the county jail greatly exceed the 120 days he would have spent in the shock incarceration program, the sentence of one year jail time impermissibly imposes an increased burden upon him. Appellant argues that in order to increase his burden, "there must be a finding that [he] violated the terms of probation." *See Nieuwenhuis v. Kelly*, 164 Ariz. 603, 606, 795 P.2d 823, 826 (App.1990). Appellant argues that he merely was ineligible for the shock incarceration program, not a violator of his probation terms.

In 1988, the Arizona legislature passed A.R.S. § 13–915, commonly referred to as the shock incarceration program. Subsection (A) states in part:

If determined eligible the offender shall complete as *a condition of intensive probation* a program of incarceration in a special shock incarceration unit of the state department of corrections under the department's care and custody for a period of one hundred twenty days from

the time of initial incarceration in the unit. *If determined ineligible the offender shall be returned to the court for further disposition.* (Emphasis added.) We read section 13–915 in conjunction with section 13–914. Section 13–914(C) states that intensive probation is a tentative sentence which can be revoked or altered by the court. This reading of §§ 13–914 and 13–915 appears to be

> in harmony with the trial court's general authority to modify probation. A.R.S. § 13–901(C) gives trial courts the authority to 'modify or add to the conditions [of probation]....' Rule 27.2 provides that '[t]he sentencing court may modify any condition which it has imposed and any regulation imposed by a probation officer.' ... [A] trial court clearly has authority to modify probation, even outside the scope of a revocation proceeding.

*Nieuwenhuis v. Kelly*, 164 Ariz. at 605–06, 795 P.2d at 825–26 (citation omitted).

The issue of modifying terms of probation in the context of court-ordered shock incarceration was addressed in *Nieuwenhuis*. There, defendant was sentenced to a three-year term of intensive probation. As a condition of probation, defendant was required to complete the shock incarceration program. He failed to qualify for the program due to medical reasons. At resentencing, the trial judge modified defendant's sentence to include an additional term of ninety days jail time. Defendant appealed claiming, *inter alia*, that this additional jail term was an impermissible increased burden. The court held otherwise, comparing what he would have served through the 120–day shock incarceration program and what he actually had to serve (i.e., ninety days in jail). Because the jail time involved fewer incarceration days than the shock incarceration program, the court found no increased burden and hence no abuse of the trial court's authority to modify probation terms. *Id.* at 606, 795 P.2d at 826.

In the case before us, we must decide whether the court, at time of resentencing, may impose a longer period of county jail incarceration than would be served under the shock incarceration program. The transcript reveals the trial court's desire to give appellant "a chance." Yet this chance was conditioned upon appellant being admitted to and completing the shock incarceration program. The trial judge explicitly stated that appellant would return for resentencing if appellant proved ineligible for, or failed to complete, the shock incarceration program. At sentencing, the judge stated:

> I figure, in my opinion, he needs a certain amount of guidance. He also needs to learn discipline and some respect, if possible. He may be able to learn it through that program. If he is unsuccessful, then he will find himself back here in court and I will resentence him. As you know, I routinely provide that the sentence is conditioned upon the defendant's acceptance in and completion of the shock incarceration program, and any failure in this regard will result in resentencing.

After imposing the terms of probation, including shock incarceration, the judge added:

> I want you to realize that these terms and conditions are conditioned upon your acceptance and completion of the shock incarceration program. If you fail in this regard, don't successfully complete it or are not eligible for, found to be ineligible to even start participating in it, then you are to return to this court, you will be resentenced.

This condition was written on the probation order by the judge as follows: "*Note* This sentence is conditioned upon def[endant]'s acceptance in and completion of shock incarceration program. Any failure in this regard will result in re-sentencing."

It is apparent that the trial judge determined that strong measures were needed to achieve rehabilitation of appellant. It also appears that the trial judge perceived the shock incarceration program as most likely to achieve the rehabilitation goals the court desired for appellant and that if, for any reason, appellant did not enter and complete the program, the trial judge wished to retain the sentencing options

available to him. This interpretation is consistent with A.R.S. § 13–915(A) which provides that if an offender is determined to be ineligible for the program, "the offender shall be returned to the court for further disposition."

Addressing the length of incarceration in the sentencing orders of the court, we are unconvinced that equating time spent in the county jail with time spent in a shock incarceration program on a day-for-day basis is appropriate. The purpose of probation is to rehabilitate the offender. *State v. Moore*, 149 Ariz. 176, 177, 717 P.2d 480, 481 (App.1986). Moreover, "quarantin[ing] [appellant] from the old crowd and others with a demonstrated propensity toward lawlessness should increase chances for reformation by removing temptation from improper association." *State v. Hennessy*, 13 Ariz.App. 546, 547, 479 P.2d 194, 195 (1971).

Human experience and common sense tell us that the rehabilitation needs of probationers vary greatly. We also discern that some probationary programs have more rehabilitative value than others. The shock incarceration program is an intense and condensed approach to teaching inmates discipline, respect for self and others, and personal responsibility. The program is specifically designed to "shock the youth with a preview of prison life" in a military boot camp setting. A.R.S. § 13–915(G). Shock incarceration inmates are awakened at 4:00 a.m., followed by a rigorous day consisting of physical training, team-oriented work tasks and projects, and structured educational programs, which continue until 9:00 p.m. Inmates are allowed only one-half hour of structured free time during the day. Inmates are not allowed to speak even during meal times.[1] The typical day in shock incarceration bears no resemblance to the typical day spent in jail where inmates largely spend their time in non-productive activities and where they are allowed personal items such as magazines, radios, and televisions for recreation and diversion throughout the day. To simply compare days spent in jail to days spent in shock incarceration ignores the highly structured and rehabilitation-oriented agenda of the shock incarceration program. We, therefore, decline to equate days spent in jail on an equal basis with days spent in shock incarceration. Consequently, we find no error in the trial court's resentencing appellant to one year incarceration in jail as a condition of his intensive probation.

■ Finally, the State argues that resentencing appellant to a lesser number of days of incarceration in order to match in duration the 120–day shock incarceration program would require its consent. *See State v. Rutherford*, 154 Ariz. 486, 744 P.2d 13 (App.1987). Without this agreement, the State contends, the judge could not arbitrarily modify the plea agreement. We agree. Although the State offered no objection at the time of sentencing when the trial court imposed shock treatment instead of the agreed one-year flat jail time, there is nothing in the record to suggest that the State accepted this change other than upon the conditions stated by the court; that is, if appellant failed to successfully complete the shock incarceration program, he would be returned for sentencing. The parameters of sentencing, and therefore resentencing, were defined by the written plea agreement unless the parties jointly agreed otherwise.

For the foregoing reasons, the sentence is affirmed.

GERBER and EHRLICH, JJ., concur.

---

1. Detailed description of Arizona's shock incarceration program is found in Arizona Department of Corrections Shock Incarceration Program Rules and Regulations; *see* Kim Kelliher, *Incarceration Program is still being assessed,* The Arizona Daily Star, September 3, 1991, at Section B1, B3; *see* Joyce Valdez, *She passes state-prison 'shock' test, wins pride,* The Arizona Republic, March 26, 1992, at Section A 1–2.