858 P.2d 649

**STATE of Arizona, Appellee,**

v.

**Kevin Lee BRADLEY, Appellant.**

**No. CR–92–0460–PR.**

Supreme Court of Arizona,
En Banc.

Sept. 7, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for State of Ariz.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for Kevin Lee Bradley.

## OPINION

MARTONE, Justice.

We are asked to decide whether a criminal offender placed on intensive probation supervision conditioned on shock incarceration may be sentenced to prison after having been found ineligible for the shock incarceration program. We hold that he may.

## I. BACKGROUND

Kevin Lee Bradley was placed on probation for two class 2 felony convictions. He violated the terms of his probation and, after hearing, the trial court placed him on intensive probation supervision with the condition that he participate in the shock incarceration program established by A.R.S. § 13–915. Pursuant to § 13–915(A), Bradley was incarcerated in the department of corrections for eligibility screening for the shock incarceration program. The department discovered that Bradley had previously served a prison term and was,

2. Chief Justice Stanley G. Feldman did not participate in the determination of this matter. Pursuant to Ariz. Const. art. 6, § 3, the Honorable Lloyd Fernandez, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in his stead.

thus, ineligible for the program.[1] He was, therefore, returned to the superior court for further disposition. Section 13–915(A). Another hearing was held. The trial court vacated its previous order and, because shock incarceration was unavailable, sentenced Bradley to prison.

The court of appeals vacated this sentence on appeal. It held that the trial court could not resentence Bradley absent a finding that he violated the terms of his probation. Instead, it held that the trial court could only modify the conditions of that probation. A finding of ineligibility is, of course, not a violation of a *term* of probation. It is, though, a failure of a *condition* of probation. We granted the state's petition for review and now vacate the decision of the court of appeals and affirm the trial court.

## II. ANALYSIS

The court of appeals relied upon *Nieuwenhuis v. Kelly*, 164 Ariz. 603, 795 P.2d 823 (App.1990), for the proposition that an offender found ineligible for shock incarceration may not be sentenced to prison or even subjected to harsher probation conditions absent a finding that he or she violated probation. *See also State v. Gatlin*, 171 Ariz. 418, 831 P.2d 417 (App.1992) (while not explicitly endorsing or rejecting the *Nieuwenhuis* rationale, the court held that the jail term imposed after the defendant was found to be medically ineligible for shock was valid because it did not entail an increased burden). *Nieuwenhuis* acknowledged that a violation of probation is not a necessary precondition to the court's power to modify probation terms, but assumed that once placed on probation, it is final, absent violation, even if a precondition to probation fails. 164 Ariz. at 606, 795 P.2d at 826. We disagree.

Section 13–915(A) states that:

the court may order that an offender who is granted a period of intensive pro-

bation and who meets all of the criteria in subsection B of this section shall be incarcerated in the state department of corrections for a period of not to exceed forty-five days for the purpose of eligibility screening for the shock incarceration program. If determined eligible the offender shall complete as a condition of intensive probation a program of incarceration in a special shock incarceration unit ... for a period of one hundred twenty days.... *If determined ineligible the offender shall be returned to the court for further disposition.*

(Emphasis added.) It is thus understood that some offenders will be found ineligible to participate in the shock incarceration program. In such an event, the offender is returned to the trial court for "further disposition." The most common sense understanding of this language is that the sentencing process is back to "square one," as the trial court assumed in this case.[2]

A person can only be placed on intensive probation if the court first suspends the imposition or execution of sentence under A.R.S. § 13–901(A). And, under § 13–915(A), it may further condition intensive probation upon the person's eligibility for and completion of incarceration in a special shock unit of the department of corrections. This is a military style program designed for youthful offenders "in an attempt to shock the youth with a preview of prison life." Section 13–915(G). By definition, if the person is not eligible, the condition of shock incarceration cannot be satisfied, and if that condition cannot be satisfied, the condition for intensive probation itself fails. Thus, the trial court is back to ground zero and must then decide, *ab initio*, an appropriate disposition. Intensive probation without shock might be indicated. Or, it might not. The judge may have conditioned probation on shock as an alternative to prison—not probation. The statutory language "shall be returned

---

1. An offender who has previously been incarcerated in an adult prison facility is ineligible for shock incarceration. A.R.S. § 13–915(B)(3). Such an offender has had his taste of prison and has not been deterred by it.

2. The trial courts in *Nieuwenhuis* and *Gatlin* also assumed that they were "resentencing" the offenders rather than merely modifying their probation.

to the court for further disposition" is broad enough to include a continuation of the suspension of sentence (which preceded probation) or sentencing itself. Thus, the court has the power to sentence unconditionally or conditionally, and, therefore, may sentence the person to prison, or place him on intensive probation supervision with revised terms.

This reading furthers the purpose of the shock incarceration program, which is a last ditch effort to keep youthful offenders out of the prison system to which they appear to be headed. In many cases the trial court would sentence the offender to prison rather than grant intensive probation if shock incarceration were unavailable as a condition of that probation. If the initial selection of intensive probation is binding on the trial court even in the event that the offender turns out to be ineligible for shock incarceration, courts will be reluctant to use the program unless they are confident that intensive probation, without shock, is still preferable to prison. This would make the program unavailable to those serious offenders most in need of it.

We note that the earlier version of the shock incarceration statute had essentially this result. Unlike the present version, the previous statute contained no screening process and no provision for sentencing offenders found to be ineligible for the program. It also conditioned imposition of shock incarceration on a finding that *"the offender would otherwise be granted probation."* Former A.R.S. § 13–901.01 (amended and renumbered as § 13–915 by Laws 1989, Ch. 18, § 5). Furthermore, the program was limited to first-time felony offenders convicted of class 4, 5, or 6 felonies not involving the intentional or knowing infliction of serious physical injury or the use or exhibition of a deadly weapon or dangerous instrument. Former A.R.S. § 13–901.01(B)(2) and (5). The current program is not limited to particular classes of felonies.

This version of the statute was in effect for only a short time—from July 7, 1988 to April 12, 1989. Though the legislative history surrounding the subsequent amendment is sparse, it does indicate that the legislature wanted to encourage wider use of the program. *See,* Minutes of Senate Committee on Judiciary, Feb. 21, 1989 at 7.

To summarize, the previous version of the statute limited the use of shock incarceration to less serious offenders who, in the absence of shock incarceration, would have been granted probation. The new version made the shock incarceration program available to more serious offenders and removed the condition that they would have been granted probation in the absence of the program. At the same time, the legislature provided for eligibility screening and return of the defendant to the trial court upon a finding of ineligibility. It is reasonable to conclude that these provisions were added to enlarge the availability of the program to more serious offenders who, in the absence of the program, might be sentenced to prison rather than placed on probation. It, therefore, makes sense that when an offender is returned to the trial court upon a finding of ineligibility for the shock incarceration program, the sentencing process is back to "square one." If the statute is interpreted otherwise, courts will be reluctant to use the shock incarceration program because of a fear that, if found ineligible, the offenders will be on probation rather than in prison. This conflicts with the intent of the legislature to encourage wider use of the program.

## III. DISPOSITION

We therefore vacate the memorandum decision of the court of appeals, affirm the superior court, and remand for reinstatement of the sentence.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.