924 P.2d 1027

**The STATE of Arizona, Appellant,**

v.

**Clive ROGERS, Appellee.**

**No. CR–95–0555–PR.**

Supreme Court of Arizona,
En Banc.

Sept. 17, 1996.

As Amended Sept. 27, 1996.

Stephen D. Neely, Pima County Attorney by David Ramage–White, Deputy County Attorney, Tucson, for Appellant.

Susan A. Kettlewell, Pima County Public Defender by William J. Kirchner, Deputy County Public Defender, Tucson, for Appellee.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

In this narcotics case, the trial court granted defendant's motion to suppress because it found an investigatory stop violated the Fourth Amendment. Two police officers had stopped defendant because he emerged at night from behind some large bushes in a darkened residential area, walked down the middle of the road, and stared at two other police officers as they conducted a traffic stop. The court of appeals reversed in a memorandum decision. We granted defendant's petition for review and have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution. We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

While two uniformed police officers were conducting a traffic stop at about 10:20 p.m. one night, one of them saw defendant emerge with another individual from behind a couple of large bushes in a darkened residential area, walk down the middle of the street, and stare at the officers. The officers radioed two other officers they knew to be nearby in an unmarked car investigating a suspected drug house and asked those officers to stop the men and "find out who they were and what they were up to." The other officers then approached the defendant and his companion. One of them held his badge in his hand to identify himself and said, "police officers, we need to talk to you."

Defendant said something to the effect of "why are you cops always hassling us?," put his right hand in his pocket, started backing up, and then ran. One of the officers chased him, yelling at one point "not to dump it." Defendant continued to run and eventually entered a house. The court of appeals concluded that defendant lived in the house. The record is, to us, inconclusive on this point. In any event, the officer in pursuit approached the house and told the woman who answered the door that he was looking for a black male who had run inside. The officers called uniformed officers to the

scene. Ultimately, defendant came out of the house voluntarily, whereupon he was patted down and handcuffed. A police search of the interior of the house and the back yard yielded nothing. Officers then retraced the route of the chase and found a baggy containing what appeared to be crack cocaine near a wall defendant had jumped over during the chase.

Defendant was charged with unlawful possession of a narcotic for sale. Prior to trial, defendant moved to suppress the baggy and its contents as fruit of an investigatory stop violative of the Fourth Amendment.[1] The trial court found that during the initial stop a reasonable person would not have felt free to disregard the police and go about his business. Therefore, the court held the stop was an investigatory stop, requiring the police to have an articulable suspicion of criminal activity. The court found that the required articulable suspicion was absent under the facts leading up to the stop.

The court of appeals reversed, holding that "While we might agree with the trial court that 'a reasonable person under the circumstances would not have felt free to disregard the police and go about his business,' we do not agree that such a subjective perception is sufficient by itself to constitute a Fourth Amendment seizure." We agree with the trial court's determination and accordingly vacate the court of appeals' decision.[2]

## DISCUSSION

■ In order for a police investigatory stop to occur, a person must reasonably believe, in view of all the circumstances surrounding the incident, that he is not free to leave. *See Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1660, 134 L.Ed.2d 911 (1996); *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). "An investigatory stop

is permissible under the Fourth Amendment if supported by reasonable suspicion" that criminal activity is afoot. *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1660; *see Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). In reviewing investigatory stops we defer to the trial court's findings of fact absent abuse of discretion. *See Ornelas,* —— U.S. at —— n. 3, ——, 116 S.Ct. at 1661 n. 3, 1663. However, whether the police had a reasonable suspicion of criminal activity that justified conducting an investigatory stop is a mixed question of law and fact which we review *de novo. See Ornelas,* —— U.S. at ——, 116 S.Ct. at 1663.

■ The trial court's findings of fact are supported by the record. Given those facts, we hold that it was reasonable for defendant to feel that he was not free to leave. *See United States v. Saperstein,* 723 F.2d 1221, 1226 (6th Cir.1983) (presence of second officer relevant to reasonableness inquiry); *United States v. Wood,* 981 F.2d 536, 539 (D.C.Cir.1992) (time and place of encounter relevant). The fact that an officer pursued defendant when he did leave shows just how reasonable it was for defendant to believe his freedom was being restricted.

The state relies on *Florida v. Bostick,* which held that "no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required." 501 U.S. 429, 437, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). The state argues that the officers who stopped defendant "did not convey a message of required compliance." In *Bostick,* the officers specifically advised the defendant that he could refuse consent to have his luggage searched. *Id.* Here, the officers who approached defendant and his companion said, "police officers, we need to talk to you."

---

1. Defendant also raised a claim that the investigatory stop violated article II, section 8 of the Arizona Constitution. Neither the trial court nor the court of appeals addressed this claim separately. Nor was it included among the issues presented to us on review, although it was listed as an issue that might need to be decided if we granted review. Because our view of the federal

issue is dispositive, we do not address the state claim.

2. Defendant also argued that the arrest after the chase was illegal. The lower courts never reached this issue, it was not included in the petition for review, and we do not address it here.

Under the facts of this case, we hold that the trial court appropriately concluded that a reasonable person under the circumstances would not have felt free to disregard the police and go about his business—a conclusion supported by defendant's attempt to leave resulting in his chase and arrest.

■ We now turn to a determination of whether the officers had a reasonable suspicion that criminal activity was afoot as required by *Terry*. "Articulating precisely what 'reasonable suspicion' ... mean[s] is not possible. ⁻[It is a] commonsense, nontechnical concept[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas*, —— U.S. at ——, 116 S.Ct. at 1661 (*quoting Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). *Terry* requires articulable reasons for an investigatory stop. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. Here, the police said only that it was dark, that defendant and his companion emerged from behind some large bushes in a darkened residential area, walked down the middle of the road, and stared at the officers while they were making a traffic stop. This is insufficient justification for an investigatory stop. Therefore, if there was a stop (seizure), it was illegal.

■ For purposes of the Fourth Amendment, a seizure of a person occurs only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. In *California v. Hodari D.* the United States Supreme Court held that, absent physical force, an individual must yield to a show of authority for a seizure to occur. 499 U.S. 621, 625–26, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991). In *Hodari D.* the Court found that no seizure had occurred when a defendant ran after seeing a police car approaching him and his companions. 499 U.S. at 622–23, 629, 111 S.Ct. at 1549, 1552.

In the case before us defendant stopped, albeit briefly, and spoke to the officers before running. This case is therefore more akin to *United States v. Morgan*, decided by a federal circuit court two months after *Hodari D.*

936 F.2d 1561 (10th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). In *Morgan*, the defendant was a passenger in a vehicle which police had followed for several blocks with red lights flashing. When the driver pulled into his driveway the defendant exited the car and was told by a police officer to "hold up." Defendant replied, "What do you want?" and began backing away. The officer told the defendant not to run, but he did anyway. On these facts the *Morgan* court found that, unlike the defendant in *Hodari D.*, the defendant had "momentarily yielded" and that a seizure had, therefore, occurred. *Morgan*, 936 F.2d at 1565, 1567. In *Morgan*, the seizure was deemed valid because the officers had a reasonable, articulable suspicion justifying the stop. *Morgan*, 936 F.2d at 1567–68. Insofar as the stop is concerned, the instant case, like *Morgan*, is distinguishable from *Hodari D.* Unlike *Morgan*, however, the officers here had no reasonable articulable suspicion justifying a stop. Therefore, the seizure was invalid.

The only argument made by the state in opposition to suppressing the drugs was that the investigatory stop was legal. Because we hold that this investigatory stop violated the Fourth Amendment, we accordingly hold that the trial court properly suppressed evidence of the drugs.

### ABANDONMENT

■ The court of appeals offered an alternative holding that, even if the investigatory stop was illegal, defendant abandoned the baggy after the stop and during the chase. Inasmuch as the issue of abandonment was not raised by the state in the trial court and no factual record was made on it, it would be inappropriate for an appellate court to base a ruling on that issue. *See State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988) ("It is particularly inappropriate to consider an issue for the first time on appeal where the issue is a fact-intensive one."). Because there was no development at the trial level of the peculiarly factual issue of abandonment, we do not address it here.

## THE DISSENT

### The Procedural Disagreement

The dissent reasons that this case should be dismissed as improvidently granted because the state chose not to file a response to the petition for review and because this court did not order oral argument or additional briefs. 186 Ariz. at 513, 924 P.2d at 1032. We fail to understand the dissent's reasoning. This case has been handled precisely as have many other cases in which we have granted review and issued opinions without having a response to the petition for review, oral argument, or additional briefs. For recent examples, *see, e.g., State v. Rich,* 184 Ariz. 179, 907 P.2d 1382 (1995) (CR–95–0204–PR); *State v. Orantez,* 183 Ariz. 218, 902 P.2d 824 (1995) (CR–95–0060–PR) (both of which the dissenter joined);[3] *see also,* Ariz. R.Crim. P. 31.14(a), 31.19(f). Many of our petition for review cases are decided without oral argument and without additional briefs. For recent examples, *see, e.g., State v. Bradley,* 175 Ariz. 504, 858 P.2d 649 (1993) (CR–92–0460–PR); *State v. Arana,* 173 Ariz. 370, 843 P.2d 652 (1992) (CR–92–0193–PR) (both authored by the dissenter).

■ The rules permit, but do not require, a response to a petition for review. *See* Ariz. R.Crim. P. 31.19(e). The court sometimes requests a response to a petition for review to assist it in determining whether to grant review, but did not do so in this case. We reject the dissent's conclusion that a party may improve its position in this court by failing to respond to a petition for review. Adopting a practice of dismissing petitions for review as improvidently granted because the respondent chooses not to respond to the petition would represent a startling departure from many years of court practice, as well as from the existing rules.

■ The dissent asserts, at footnote 1, that we should not rely on the briefs filed in the court of appeals because "the issue upon which review is granted may be just one of many raised in those briefs." This theoretical possibility has nothing to do with this case. In this case, the sole issue on appeal

from the beginning was whether the trial court abused its discretion in suppressing the evidence. That was the only issue decided by the trial court, the only issue presented to the court of appeals, the only issue decided by the court of appeals, the only issue presented in the petition for review, and the only issue decided by us in this opinion. In cases in the past in which the court concluded that additional briefs might be helpful, it has asked for them, and doubtless will do so in the future. Merely to require the litigants to refile the same briefs on the same issue is an exaltation of form over substance. The court is liberal in permitting supplemental briefs if the parties request them. In this case, as in many other cases, neither party, and no member of the court, requested such supplemental briefing, and we did not order it.

### The Substantive Disagreement

There is not much to be said here. Although the dissent criticizes the majority for reaching the merits, the dissent has no difficulty reaching and deciding the merits on the same record. Indeed, the dissent asserts that the majority opinion is "error," 186 Ariz. at 513, 924 P.2d at 1032, relying on an earlier dissent by the same author. *State v. Korzuch,* 920 P.2d 312 (1996).

Our job is to decide legal issues, often very difficult legal issues, upon which reasonable minds may differ. On the point of law involved, there is simply a difference of opinion between the majority and the dissenter. The dissent concludes that "[i]f the defendant did not want to talk to the police, he could have told them so and walked away." 186 Ariz. at 51, 924 P.2d 1032. Defendant did not want to talk to the police but, instead of walking away, he ran away. This, according to the dissenter, made defendant "his own worst enemy." 186 Ariz. at 514, 924 P.2d 1033. The result was an extended chase and a resulting arrest. Defendant was chased until he entered a private residence, then backup officers were called, defendant was flushed out of the private residence, and defendant

---

**3.** In both *Rich* and *Orantez* the state merely filed a notice acknowledging the receipt of the petition

for review and urging denial, without further argument.

was then arrested and put in handcuffs. The majority believes, as did the trial judge, that the evidence justified defendant's belief that he was not free to leave, either by walking or running, when he was first stopped by the police.

## DISPOSITION

The memorandum decision of the court of appeals is vacated and the trial court's order of suppression is affirmed.

FELDMAN, C.J., and ZLAKET, V.C.J., concur.

CORCORAN (Retired) and JONES, JJ., did not participate in the determination of this matter.

MARTONE, Justice, dissenting.

The majority granted review of a memorandum decision of the court of appeals without a response from the state. It then decides the merits of the case without briefs and without oral argument. This practice, which has led us to error in the past, *see, e.g., State v. Korzuch*, 920 P.2d 312 (1996), leads us into error today.[1] There was no Fourth Amendment violation. I would dismiss the petition as having been improvidently granted.

1. The Fourth Amendment does not require that police encounters with citizens be consensual. "No seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). A seizure occurs only when the police "convey a message that compliance with their request is required," *id.*, "by means of physical force or show of authority." *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (citation omitted). Just asking someone for proof of who they are does not amount to a seizure under the Fourth Amendment. *See Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). Indeed, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the seminal case in the stop and frisk area, the police first asked the defendants their names. When they mumbled unintelligibly back, the police physically restrained Terry. The Supreme Court held that Terry had not been seized until the police had taken hold of him and patted down his clothing. *Id.* at 19, 88 S.Ct. at 1879.

In this case, the police did not even get to ask Rogers if he would talk to them because he fled immediately after they identified themselves as police. The majority concludes that there was a seizure because a reasonable person would not have felt free to ignore the police officer's statement that "we need to talk to you." But that is not the relevant inquiry. A seizure occurs, as the majority notes, *ante*, at 510, 924 P.2d at 1029, only when a suspect reasonably believes that his or her freedom is being restricted. But there is no evidence in this case to suggest that the defendant's freedom was being restricted. If the defendant did not want to talk to the police, he could have told them so and walked away. As the court of appeals noted, even if a person does not feel free to walk away, that subjective belief cannot be sufficient to constitute a seizure or else "given the air of authority which naturally accompanies the presence of police, virtually every encounter between police and citizens, no matter how innocent, would constitute a seizure requiring suspicion of criminal activity." *State v. Rogers*, 2 CA–CR 94–0584, mem. dec. at 4 (App. Aug. 15, 1995).

2. Additionally, Rogers was not seized because he never submitted to the police. The majority acknowledges that *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113

---

1. Deciding the merits of a case at the same time one decides whether to grant review is a risky practice. This is especially true where all you have is the petition for review and briefs filed in the court of appeals. Those briefs address all issues raised on direct appeal. In most cases, the issue upon which review is granted may be just one of many raised in those briefs. There is thus no intense focus on the issue presented. To avoid this problem, counsel should seek leave to file a brief in this court and request oral argument within 15 days after the clerk mails notice of the court's order granting review. See Rule 31.19(f), Ariz. R.Crim. P., and Rule 23(f), Ariz. R. Civ.App. P.

L.Ed.2d 690 (1991), requires that "absent physical force, an individual must yield to a show of authority for a seizure to occur." *Ante*, at 511, 924 P.2d at 1030. But there was no yielding here. Instead, Rogers criticized the police for hassling him, and then ran. There was thus no seizure. Compare what Rogers did to what his companion did. He did not run, answered the police's questions, and as far as the record indicates, was not arrested. In short, Rogers was his own worst enemy.

3. But even had there been a seizure, there was abandonment here. The majority states that the court of appeals should not have reached the abandonment question. I disagree. This record contains all the evidence that could have been presented on this issue. Property is abandoned when the defendant has "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." *State v. Walker*, 119 Ariz. 121, 126, 579 P.2d 1091, 1096 (1978) (citation omitted). Rogers put his hand in his pocket when the police approached him. As he ran, the police told him not to dump whatever was in his pocket. The police lost sight of the lower half of his body. They searched Rogers and the house and found nothing. But they found a baggy containing cocaine in the area where they lost sight of him. This evidence is sufficient to support a finding that Rogers abandoned the cocaine and, of course, one who has abandoned property cannot complain of a search or seizure. *State v. Walker*, 119 Ariz. at 126, 579 P.2d at 1096.

4. The police were making a traffic stop at 10:20 in the evening, when two men came out from some bushes and walked down the middle of the street. This conduct would have aroused anybody's reasonable suspicion. The police could have stopped and cited them for violating A.R.S. § 28–796 (pedestrians on roadways), but did not. Instead, they just said "we need to talk to you." That is not a seizure. I respectfully dissent.