NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SIMON SERGIO GARCIA, *Appellant.*

No. 1 CA-CR 18-0024
FILED 12-6-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-109912-001
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

Simon S. Garcia, Buckeye
*Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1        Simon Sergio Garcia timely filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his conviction of theft of a means of transportation, a Class 3 felony.  Garcia's counsel has searched the record on appeal and found no arguable question of law that is not frivolous.  *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530 (App. 1999). Counsel now asks this court to search the record for fundamental error. Garcia filed a supplemental brief, which we address below.   After reviewing the entire record, we affirm Garcia's conviction and sentence.

### FACTS AND PROCEDURAL BACKGROUND

¶2        While investigating a reported break-in at a home, two Phoenix police officers saw a vehicle driving toward the home.[1]  As the officers approached the vehicle, it came to a stop.  When one of the officers asked Garcia, the driver, for identification, he responded that he did not have any.  The officer then asked Garcia to turn off the vehicle's engine, and Garcia sped off.  Officers found Garcia a short distance away and arrested him after they learned the vehicle he was driving had been stolen.  A grand jury later indicted Garcia on theft of a means of transportation.

¶3        Before trial, Garcia moved to suppress all evidence obtained from his initial contact with police, arguing the interaction was an unconstitutional seizure under the Fourth Amendment.  The court held a hearing, at which the two officers testified that the home they were investigating was a boarded-up "drug house" into which no one was allowed.  The officers said they were on the street outside their squad cars waiting for backup when they saw a woman approach on foot.  The officers testified they knew the woman used to live in the home, that she was a

---

[1]        Upon review, we view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against Garcia.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

known drug user and that she was barred from entering the home. An officer testified Garcia's vehicle was closely following the woman and, because "it was apparent that [the woman] was with" the driver, they decided to contact both her and the driver.

**¶4** One of the officers testified that when he approached the vehicle, Garcia pulled to a stop without the officer asking. Once the vehicle stopped, the officer stood along the driver's side and began asking Garcia some questions. The officers testified that there was no physical barrier in front of the vehicle that prevented Garcia from driving off. An officer testified he asked Garcia what he was doing in the area, and, as recounted above, whether Garcia had any identification – to which Garcia said no – and then asked Garcia to turn off the engine. At that, Garcia sped off. According to the officer, the entire interaction lasted less than a minute.

**¶5** At the close of the hearing, the superior court denied the motion, ruling that the officers' interaction with Garcia was a "consensual encounter," not a forced stop. The court found that Garcia "was in a vehicle, he was driving, the car [remained on] and he was actually able to leave." Additionally, the officers were "not holding the door, [or] anything of that nature."

**¶6** At the subsequent trial, a witness testified he owned the vehicle and it had been stolen. The court also admitted a stolen-vehicle report documenting the theft, and the two officers also testified about their encounter with Garcia. The jury convicted Garcia of theft of a means of transportation under Arizona Revised Statutes ("A.R.S.") section 13-1814(A)(5), (2018).[2] Before sentencing, Garcia admitted he had prior felony convictions, after which the court sentenced him as a category-three offender to a presumptive sentence of 11.25 years. *See* A.R.S. § 13-703(C), (J) (2018).

**¶7** Garcia timely appealed. Garcia filed a supplemental brief *in propria persona* raising three issues, discussed below. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018), 13-4031 (2018) and -4033 (2018).

---

[2] Absent material revision after the date of an alleged offense, we cite a statute's current version.

## DISCUSSION

### A.     Due Process Review.

¶8     The record reflects Garcia received a fair trial.  He was represented by counsel at all stages of the proceedings against him and was present at all critical stages.  The court held appropriate pretrial hearings.  The State presented both direct and circumstantial evidence sufficient to allow the jury to convict.  The jury was properly comprised of eight members.  The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict.  The jury returned a unanimous verdict, which was confirmed by juror polling.

¶9     At a hearing following his conviction, Garcia's counsel stated Garcia would admit his prior felony convictions.  The following exchange then ensued:

> The Court: Mr. Garcia, do you understand what your attorney just told me?
>
> The Defendant: Yeah.
>
> The Court: And is that what you want to do, is waive your right to a trial in the matter and just admit to having these priors on your record?
>
> The Defendant: Yeah.
>
> The Court: Has anybody forced you or threatened you, in any way, to do that?
>
> The Defendant: No.
>
> The Court: Has anybody promised you anything?
>
> The Defendant: No.
>
> The Court: In the past 24 hours have you consumed any alcohol, drugs or medications affecting your ability to make an intelligent decision?
>
> The Defendant: No.
>
> The Court: All right.  Thank you.

¶10           The court's colloquy with Garcia was insufficient under
Arizona Rule of Criminal Procedure 17.6 because the court did not fully
inform him of the consequences his admissions would have on the
sentencing range applicable to his conviction and the constitutional rights
he was foregoing, including the right to counsel at a trial on his prior
convictions. *See* Ariz. R. Crim. P. 17.2; *State v. Osborn*, 220 Ariz. 174, 176-77,
¶¶ 5-7 (App. 2009) (when defendant admits a prior felony conviction,
court's colloquy must contain all items stated in Rule 17.2).  The court's
error, however, did not prejudice Garcia because the court also admitted in
evidence a certified copy of an Arizona Department of Corrections "pen
pack" listing the prior convictions to which Garcia had admitted. *See State
v. Morales*, 215 Ariz. 59, 61-62, ¶¶ 10-11, 13 (2007) (absence of colloquy not
prejudicial if convictions may be proved by other uncontested evidence in
the record); *State v. Gonzalez*, 233 Ariz. 455, 458-59, ¶¶ 11-12 (App. 2013); *see
also State v. Henderson*, 210 Ariz. 561, 568, ¶ 26 (2005).

¶11           Finally, the superior court received and considered a
presentence report, addressed its contents during the sentencing hearing
and imposed a legal sentence for the crime of which Garcia was convicted.

**B.      Issues Raised in Garcia's Supplemental Brief.**

**1.      Evidence that someone else owned the vehicle.**

¶12           In his supplemental brief, Garcia argues the State offered
insufficient evidence to prove the vehicle he was driving was owned by
someone else.  Garcia argues that the witness who testified the vehicle
belonged to him was not its registered owner and that the State did not offer
a copy of the vehicle's title to prove ownership.  "Reversible error based on
insufficiency of the evidence occurs only where there is a complete absence
of probative facts to support the conviction." *State v. Scott*, 113 Ariz. 423,
424-25 (1976).

¶13           Garcia was convicted of violating § 13-1814(A)(5).  "A person
commits theft of means of transportation if, without lawful authority, the
person knowingly . . . [c]ontrols another person's means of transportation
knowing or having reason to know that the property is stolen." A.R.S. § 13-
1814(A)(5).  The witness testified that (1) he owned the vehicle, (2) someone
stole the vehicle from him and (3) he reported the vehicle stolen and
provided the police with information on the vehicle.  The witness also
testified he informed the police that, even though his name was not on the
car's registration, he held the title and showed police the title when he
reported the theft.  Moreover, the witness testified he never gave Garcia or

any person other than the witness's cousin permission to drive the vehicle. All this evidence was sufficient to allow the jury to find that the witness owned the vehicle, even though it did not see a copy of the title. "The credibility of witnesses is an issue to be resolved by the jury; as long as there is substantial supporting evidence, we will not disturb their determination." *Scott*, 113 Ariz. at 425.

## 2. The State's purported failure to disclose the bodycam footage.

¶14 Garcia also argues that, despite a request by his former counsel, the State failed to disclose police bodycam footage capturing his initial conversation with the officers at the scene. Garcia's counsel objected to the State's failure to disclose the video before trial and orally asked the court to sanction the State by preventing it from using the footage at trial. According to the record, the court directed Garcia's counsel to make a written request for the video; the State did not object to producing the footage and agreed to look into why it had not been produced.

¶15 Garcia cites nothing in the record to support his contention on appeal that the State ultimately failed to disclose the footage. In any event, a defendant who asserts a disclosure violation may not prevail on appeal absent proof he was prejudiced by the nondisclosure. *See* Ariz. R. Crim. P. 15.1 (governing State's disclosure obligations); *State v. Jessen*, 130 Ariz. 1, 4-5 (1981) (defendant must prove he was prejudiced by a court's "choice of sanction or the choice of no sanction for a violation"). Garcia does not say how the State's nondisclosure prejudiced him; thus, he has not shown reversible error. *See Henderson*, 210 Ariz. at 568, ¶ 26 (2005).

## 3. Whether the officers' initial contact was an unconstitutional *Terry* stop.

¶16 Last, Garcia argues that the superior court erred by denying his motion to suppress and finding the officers' initial contact with him was not an illegal investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). We review the superior court's ruling on a motion to suppress for abuse of discretion and consider only the evidence presented at the suppression hearing, viewing it in the light most favorable to sustaining the court's ruling. *State v. Primous*, 242 Ariz. 221, 223, ¶ 10 (2017). We defer to the superior court's factual findings if they are reasonably supported by the evidence but review its ultimate legal determination *de novo*. *State v. Adair*, 241 Ariz. 58, 60, ¶ 9 (2016); *see also State v. Wyman*, 197 Ariz. 10, 13, ¶ 7 (App.

2000) ("Whether a person has been seized by police is a mixed question of law and fact.").

¶17         The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. An investigatory stop – a seizure – occurs when, in light of all the circumstances, a person reasonably believes he is not free to leave. *State v. Rogers*, 186 Ariz. 508, 510 (1996). Such a stop occurs when a person submits to an officer's use of physical force or show of authority. *See id.* at 511.

¶18         The evidence supported the superior court's finding that the officers' initial contact with Garcia was a consensual encounter, so that no Fourth Amendment protections attached. As one of the officers testified, when he approached the side of the vehicle as it drove up, Garcia voluntarily stopped, without the officer asking him to. Further, the officer spoke to Garcia from the driver's side of the vehicle and did not try to restrain him. The entire interaction lasted less than a minute. Indeed, Garcia had not turned off the ignition before he sped away.

¶19         Based on this evidence, we cannot say the superior court abused its discretion by finding that Garcia voluntarily stopped his car to engage with the officers without any show of authority or force by the officers and that the officers accordingly did not detain him for purposes of the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[O]fficers do not [seize a person] by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.").

¶20         Garcia also argues that the bodycam footage would have proven the officers used a show of force to stop the vehicle, but as noted above, his contention is mere speculation without proof of the contents of the footage.

**CONCLUSION**

¶21         We have reviewed the entire record for reversible error and find none, and therefore affirm the conviction and resulting sentence. *See Leon*, 104 Ariz. at 300.

¶22         Defense counsel's obligations pertaining to Garcia's representation have ended. Counsel need do no more than inform Garcia of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme

Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the court's own motion, Garcia has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Garcia has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA