NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MAURICE THOMAS, *Appellant*.

No. 1 CA-CR 18-0779
FILED 10-17-2019

Appeal from the Superior Court in Maricopa County
No. CR2017-030335-001
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1        Maurice Thomas appeals his conviction for possession of marijuana, a Class 1 misdemeanor. Thomas challenges the superior court's finding that the arresting officers had reasonable suspicion to stop him. Because he has shown no abuse of discretion, his conviction and probation grant are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2        In July 2015, two Tempe Police Department gang unit detectives were patrolling two adjacent neighborhoods, both of which were considered high-crime areas with the presence of rival street gangs. Although unmarked, the detectives in a vehicle that displayed police lights in the windshield and grill, a siren and a "prisoner cage" in the back seat that was visible from the street. Both detectives were wearing vests and shirts indicating they were police officers. One of the detectives later testified "[i]t was obvious that we were the police."

¶3        While patrolling on a north-south street, the detectives saw two males walking along the east curb crossing into one of the neighborhoods. The detectives recognized one of the men as Kevin Kelly, who was wanted on outstanding warrants. The detectives did not recognize the other man, who they later learned was Thomas. As the detectives turned the vehicle around, the two ran east through the neighborhood. The detectives attempted to follow, but lost sight of the men. A few minutes later, they found Thomas, who continued to walk  away from them.

¶4        The detectives followed Thomas on foot to an area apartment. Thomas remained outside of the apartment, and the apartment door was closed as the detectives arrived. The officers later testified they believed Kelly was hiding in the apartment. The detectives began asking Thomas about Kelly and "began speaking to [Thomas] about who he was running with, why he was running, what was going on, things of that nature." At that time, the detectives detained Thomas in the back of a patrol car.

¶5        Thomas provided the detectives with conflicting responses. Thomas claimed he did not know Kelly or was not with Kelly just minutes earlier. When asked why Thomas ran from police, Thomas gave two different, inconsistent responses. First, Thomas denied running from the detectives. Then Thomas changed his story, claiming to be running to meet a woman. When asked about Kelly's location, Thomas claimed not to know Kelly's whereabouts. Kelly was later discovered in the apartment where detectives found Thomas. The officers arrested Thomas for obstructing a criminal investigation in violation of Tempe City Code section 22-6 (2019).[1] A detective conducted a search incident to arrest and discovered marijuana in Thomas' possession. *See Virginia v. Moore,* 553 U.S. 164, 177-78 (2008) (holding evidence found in a search incident to misdemeanor arrest is admissible under Fourth Amendment).

¶6        Thomas was charged with possession of marijuana, a Class 6 felony. Thomas filed a pre-trial motion to suppress, arguing the detectives lacked reasonable suspicion for the initial contact, meaning the subsequent arrest and search was improper. After the suppression hearing, during which both detectives testified, the court denied the motion, finding they had reasonable suspicion to detain Thomas for questioning. Following a bench trial, Thomas was convicted of possession of marijuana, a Class 1 misdemeanor, and placed on unsupervised probation for three months. This court has jurisdiction over Thomas' timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 12-120.21 (A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶7        This court reviews "a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's rulings." *State v. Adair*, 241 Ariz. 58, 60 ¶ 9 (2016) (citing *State v. Butler*, 232 Ariz. 84, 87 ¶ 8 (2013)). The court defers to the superior court's factual findings and reviews questions of law de novo. *Id.* (citing cases).

---

[1] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

¶8        Thomas argues the detectives needed reasonable suspicion to approach him outside of the apartment. Not so. Thomas was not detained at that time, and the detectives approached him to speak with him about Kelly's location. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("a seizure does not occur simply because a police officer approaches an individual and asks a few questions"). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). The record does not show, and the superior court did not find, that Thomas was compelled to answer their questions or was not free to leave at that time.

¶9        The point at which the officers needed reasonable suspicion was when Thomas was detained. *See State v. Serna*, 235 Ariz. 270, 273 ¶ 12 (2014). The record supports a finding that officers detained Thomas *after* he answered their questions by providing inconsistent statements. When the officers placed Thomas in the back of a patrol vehicle is the point when a reasonable person would not have felt free to leave, and by then, the detectives had a reasonable suspicion that Thomas was involved in criminal activity. *See Bostick*, 501 U.S. at 434.

¶10        Reasonable suspicion requires "a particularized and objective basis." *State v. Primous*, 242 Ariz. 221, 223 ¶ 11 (2017) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Reasonable suspicion is determined from "the totality of the circumstances." *State v. Evans*, 237 Ariz. 231, 234 ¶ 8 (2015) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Reasonable suspicion requires more than a hunch, but an officer may draw reasonable inferences based upon experience. *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

¶11        Thomas' actions and statements gave rise to a reasonable suspicion that he was hindering the detectives' search for Kelly. Given Thomas' proximity to Kelly (who had two warrants for his arrest) in a high crime neighborhood and, more specifically, Thomas' unprovoked flight upon seeing the officers coupled with his inconsistent statements in response to their questions, the superior court did not err in concluding the detectives had reasonable suspicion by the time they detained Thomas. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (concluding "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police"); *cf. Primous*, 242 Ariz. at 224-25 ¶¶ 13-21 (holding "mere proximity or companionship" with other men who fled, when defendant "did not react in a suspicious manner to the police encounter or when one of the other

men ran away," did not suggest defendant was engaged in criminal activity, was armed or dangerous).

¶12        Thomas relies extensively on *State v. Rogers*, 186 Ariz. 508 (1996) (4-1 decision) in arguing that "[s]uspicious circumstances do not necessarily support a particularized and objective basis for an investigative stop." *Rogers*, however, is distinguishable.

¶13        In *Rogers*, while conducting a traffic stop at night, officers "saw defendant emerge with another individual from behind a couple of large bushes in a darkened residential area, walk down the middle of the street, and stare at the officers." 186 Ariz. at 509. Another officer then approached the defendant and said "police officers, we need to talk to you." *Id.* In response, the defendant refused to speak with the officer, "started backing up, and then ran," the officer gave chase and defendant "continued to run and eventually entered a house." *Id.* When the "defendant came out of the house voluntarily, . . . he was patted down and handcuffed" and later charged with unlawful possession of a narcotic for sale, based on a baggy containing cocaine near a wall the "defendant had jumped over during the chase." *Id.* at 509-10. *Rogers* affirmed the grant of a motion to suppress. *Id.* at 509.

¶14        In concluding the superior court had not abused its discretion in granting the motion to suppress, *Rogers* stated that the fact "it was dark, that defendant and his companion emerged from behind some large bushes in a darkened residential area, walked down the middle of the road, and stared at the officers while they were making a traffic stop" did not constitute reasonable suspicion. *Id.* at 511. By contrast, here, Thomas' flight was nearly immediate, unprovoked and occurred before police approached him. Similarly, although Thomas could have decided not to respond to the officers' questions when they later found him, instead, he provided inconsistent (and demonstrably false) answers to their questions. Moreover, there is no suggestion that Thomas (or a reasonable person) would not have felt free to leave before doing so. Unlike *Rogers*, the superior court did not abuse its discretion in concluding Thomas' actions and statements gave rise to a reasonable suspicion for the officers to detain him when they did. *See Adair*, 241 Ariz. at 60 ¶ 9; *see also State v. Teagle*, 217 Ariz. 17, 22 ¶ 19 (App. 2007).

## CONCLUSION

¶15        Because Thomas has not shown the court abused its discretion in denying his motion to suppress, his conviction and resulting probation grant are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA