NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARIA QUINTERO LOPEZ, *Appellant.*

No. 1 CA-CR 21-0220

FILED 01-24-2023

Appeal from the Superior Court in Maricopa County
No.  CR2018-006841-002
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

Grand Canyon Law Group, Mesa
By Angela C. Poliquin
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L,** Judge:

¶1         Maria Quintero Lopez appeals her conviction and sentence for selling or transporting dangerous drugs. Finding no error, we affirm.

**BACKGROUND**

¶2         The trial evidence, considered in the light most favorable to sustaining the verdict, reveals the following. *See State v. Guerra,* 161 Ariz. 289, 293 (1989). A Drug Enforcement Administration (DEA) task force was conducting surveillance when the subject drove from a suspected stash house to another home on West Moreland in Phoenix. Moments later, a man in a white rental SUV with Illinois license plates got out and walked towards the home. A few minutes later, the man returned to the SUV. He opened the rear hatch and leaned into the "back trunk area" as if he were putting something inside. A woman, later identified as Lopez, joined the man in the SUV. They drove away and eventually went northbound on I-17.

¶3         Suspecting contraband may be in the SUV, a task force member requested a "whisper stop" be conducted on the vehicle. As explained at trial, a law enforcement agency investigating a particular vehicle may request another agency develop an independent legal basis to stop and search it. Known as a "whisper stop," this process helps protect the original investigation "from anybody catching on to what they do[.]"

¶4         Trooper Gregor with the Arizona Department of Public Safety was "working northbound traffic out of Phoenix [on I-17]" when informed of the task force's request. Gregor then saw a white passenger vehicle pass him at a high rate of speed. He followed and as he was "catching up to it," the vehicle slowed. Gregor "paced the vehicle at 80 miles an hour[,]" five miles an hour over the posted speed limit. Gregor stopped the vehicle, a white rental SUV with Illinois license plates.

¶5         During the traffic stop, Trooper Gregor separated the driver, Edgar Vazquez, from Lopez, the only passenger, and questioned them

individually. The address on Lopez's driver's license corresponded to the Phoenix home on West Moreland, where the DEA task force observed the SUV earlier that evening. Lopez explained to Gregor that she and Vazquez were headed to Flagstaff to play in the snow, but she did not know where they were staying because Vazquez had made the reservation. When Gregor relayed to Vazquez what Lopez said, Vazquez became visibly nervous.

¶6        Trooper Gregor requested a canine unit, and Detective Maddux responded with his drug detection dog, Marley. Marley conducted a "free air sniff" of the SUV and alerted to the back of the vehicle. Maddux opened the rear hatch of the SUV, and Marley jumped inside, alerting to one of two bags stowed there. Lopez admitted both bags belonged to her.

¶7        Detective Maddux opened the smaller bag, revealing what looked like a "good amount" of methamphetamine in two zip-lock bags. The other bag contained similar items. Testing verified that the four zip-lock bags had almost six pounds of methamphetamine.

¶8        Nearly three years later, the State charged Vazquez and Lopez with one count of selling or transporting dangerous drugs. *See* A.R.S. § 13-3401(6)(c)(xxxviii) (definition of "dangerous drugs" includes methamphetamine). Vazquez reached a plea agreement with the State.

¶9        At her trial in 2021, Lopez testified arguing she committed the offense under duress. In response, the State presented expert testimony explaining that drug traffickers seldom threaten people with violence to ensure successful drug deliveries. Instead, traffickers prefer to establish trust with, and pay, the couriers. The State also introduced a text found on Lopez's cellphone from around the time of her arrest, reflecting she invited "Belen" to accompany her the next day on a four-day trip that would earn both $2,000.00.

¶10       The jury rejected Lopez's duress defense and found her guilty. The trial court imposed a mitigated seven-year prison sentence, and Lopez timely appealed.

## DISCUSSION

### I.    Motion to Dismiss

¶11       Lopez argues she was denied due process when the superior court declined to grant a motion to dismiss based on the State's purported

pre-indictment destruction of exculpatory evidence.[1] According to Lopez, this evidence consisted of GPS data from Trooper Gregor's vehicle suggesting the SUV was traveling under the posted speed limit when he "paced" the vehicle as they drove northbound on the I-17. We review a superior court's denial of a motion to dismiss an indictment for abuse of discretion. *State v. Hulsey*, 243 Ariz. 367, 377, ¶ 17 (2018).

**¶12**     The record reflects that the superior court denied the motion to dismiss without prejudice because Lopez requested delaying a definitive ruling until after the court conducted an evidentiary hearing on a motion to suppress. Lopez does not claim she later re-urged the dismissal motion, and the record does not reveal otherwise. The court's denial of the motion without prejudice was not an abuse of discretion. *See State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004) (noting an abuse of discretion occurs when "no reasonable judge would have reached the same result under the circumstances").

## II.     Motion to Suppress

**¶13**     Lopez claims the superior court erred by denying her pretrial motion to suppress evidence obtained during Trooper Gregor's traffic stop. Lopez argued the stop violated her Fourth Amendment rights because the basis for the stop—the SUV's speeding—"was impossible for Trooper Gregor to have determined[.]"

**¶14**     The exclusionary rule prevents the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). The Fourth Amendment protects people from unreasonable searches and seizures. *Scott v. United States*, 436 U.S. 128, 137 (1978). "An investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment . . . ." *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).

**¶15**     To comply with the Fourth Amendment, a law enforcement officer needs only reasonable suspicion that the driver has committed a traffic offense to stop a vehicle. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). The reasonable suspicion necessary to justify an investigatory stop

---

[1]     Although the record shows that Lopez joined Vazquez's dismissal motion that apparently presented this issue to the superior court, the motion itself is not in the record on appeal, and Lopez did not otherwise provide a copy of it with her briefs. Lopez's reply in support of the motion, however, is in the record.

is based on the totality of the circumstances such that the officers can establish "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation omitted).

¶16          The superior court held a two-day evidentiary hearing on the motion to suppress. At the hearing, Trooper Gregor explained watching the SUV drive by him at a "high rate of speed," and then pacing the SUV and determining it was traveling 80 m.p.h., five m.p.h. over the posted speed limit. On appeal, Lopez relies on her expert's testimony concluding that the SUV was lawfully traveling 67 m.p.h., the speed Vazquez claimed he was driving.

¶17          In denying the motion to suppress, the superior court found: "The difficulty in this case is that although both witnesses were credible, [the defense expert's] findings were based on approximations and estimations and were insufficient to overcome Trooper Gregor's account and observations." In other words, the court found Gregor's testimony about the SUV's unlawful speed was more credible and reliable than Lopez's expert's opinion.

¶18          This court does not weigh witness credibility; instead, we defer to the superior court's determination of such matters. *Gonzalez–Gutierrez,* 187 Ariz. at 118. And the record supports the court's finding that the expert's opinion was based on "approximations and estimations." Accordingly, that finding was not an abuse of discretion. *See State v. Rogers*, 186 Ariz. 508, 510 (1996) ("In reviewing investigatory stops[,] we defer to the trial court's findings of fact absent abuse of discretion.").

¶19          In sum, the superior court properly concluded that Trooper Gregor was justified under the Fourth Amendment to stop the SUV based on his reasonable suspicion that the vehicle was unlawfully speeding. *See id.* ("[W]hether the police had a reasonable suspicion of criminal activity that justified conducting an investigatory stop is a mixed question of law and fact [that] we review *de novo*."). The court did not err by denying the motion to suppress. In reaching this conclusion, we need not address the applicability of the collective knowledge doctrine.

### III.    Purportedly Biased Jurors

¶20          Lopez asserts the trial court fundamentally erred by failing sua sponte to rehabilitate or strike jurors who were biased in favor of police officers' credibility. To prevail on an issue subject to fundamental error review, a defendant must prove either error and resulting prejudice or that

the error "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018). This inquiry requires Lopez to first establish error. *See id.*

**¶21**　　　　During voir dire, 11 potential jurors believed that police officers are more truthful than others. Upon the court's further explanation and questioning, only two potential jurors, numbers 3 and 28, expressed difficulty assessing all witnesses' credibility at trial by the same standards. Except for potential jurors 3 and 28, the court rehabilitated the potential jurors who at first expressed bias in favor of police officers. *See State v. Comer*, 165 Ariz. 413, 426 (1990) ("A juror with preconceived notions may be rehabilitated during voir dire if an ability and willingness to be impartial is demonstrated."). The court struck potential jurors 3 and 28 for cause. As a result, Lopez fails to show that her jury was not fair and impartial. No error, fundamental or otherwise, occurred. *See State v. Thomas*, 133 Ariz. 533, 537 (1982) ("The defendant is not entitled to a particular jury, but only a fair one, and unless the record affirmatively shows that defendant was not tried by a fair and impartial jury, then there is no error." (citation omitted)); *see also State v. Riley*, 248 Ariz. 154, 173–74, ¶¶ 47–48 (2020).

## IV.　　Preclusion of Defense Evidence

**¶22**　　　　When trial proceedings recommenced the day Lopez testified, defense counsel informed the court that Lopez "handed me a card, a police victim's rights card. She was attacked last night. She suspects it's the same people that are involved in this whole situation. Since then, she's been able to calm down. I think she's going to be okay to proceed at this point."[2] Defense counsel then asked the court to seal Lopez's testimony and "turn off the live feed." The court agreed to do so. The court then stated: "[W]hatever unfortunate incident happened to your client over the weekend, I assume that's not going to be presented for the jury." Defense counsel responded: "No, Judge. I don't think I have any basis to present it for the jury. I just needed the Court to be aware of it." The trial proceeded, and Lopez then testified.

**¶23**　　　　Lopez contends the trial court violated her right to present a complete defense by failing sua sponte to admit evidence showing that she was physically attacked the evening before she testified. Lopez claims, without reference to supporting authority, that the evidence was "material" to her duress defense. Because Lopez failed to offer the evidence and conceded, without argument, that there was no basis for its introduction,

---

[2]　　　Lopez was on secured release before and during trial.

and then failed to make any offer of proof of the content of the evidence, she waived this argument below.

## V.     Other Evidentiary Rulings

**¶24**         Before trial, the State requested three preliminary evidentiary rulings. First, the State filed a notice of its intent to introduce the text conversation between Lopez and Belen. Second, the State moved to admit Lopez's March 2016 arrest in California that, like the incident here, also involved the traffic stop of a vehicle in which Lopez was a passenger and a subsequent discovery of six pounds of methamphetamine. Third, the State sought to admit Lopez's May 2016 conviction in Colorado for possessing methamphetamine for distribution.

**¶25**         The superior court addressed the State's motions in limine at a pretrial hearing. As for the text conversation, the court overruled Lopez's hearsay objection and granted the State's motion. Regarding Lopez's California arrest, the court ruled that the arrest would be admissible "to test [Lopez's] credibility" if she testified that the drug offense here was the only time she transported drugs. Finally, the court ruled that if Lopez presented a duress defense, the "unsanitized"[3] Colorado conviction would be admissible to rebut that defense.

**¶26**         At trial the State introduced the text conversation showing Lopez invited Belen on a four-day trip for which both would earn $2,000, and they would leave the next day. Regarding the California arrest and Colorado conviction, defense counsel "drew the sting" on direct examination, and Lopez testified that, two weeks after the traffic stop involved here, she was arrested in California for transporting drugs. Lopez also testified on direct examination that, after the California arrest, she was arrested and convicted in Colorado for transporting drugs.

**¶27**         On appeal, Lopez does not challenge the admission of the text conversation. She does, however, challenge the admissibility on relevance grounds of "photographs and web searches . . . of cartel dolls and plastic surgery" found on her phone. Although Lopez properly concedes the applicable standard of review is for fundamental error, she does not explain

---

[3]        "Sanitizing" a prior conviction refers to the judicial practice of limiting the admissibility of a prior conviction to the fact of conviction only. The nature of the offense underlying the conviction is therefore withheld from the jury. *See State v. Perkins*, 141 Ariz. 278, 285 (1984), *overruled on other grounds by State v. Noble*, 152 Ariz. 284, 288 (1987).

how, considering the overwhelming evidence of guilt admitted at trial, the jury would not have returned a guilty verdict absent this cell phone evidence. In failing to do so, Lopez does not satisfy her burden of demonstrating prejudice. *See Escalante*, 245 Ariz. at 144, ¶ 31 (To prove prejudice under fundamental error review, a defendant must show "that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." The standard for prejudice is not "easily satisfied" and "necessarily excludes imaginative guess work.").

**¶28** Lopez goes on to argue the evidence of the California arrest and Colorado conviction should have been "sanitized" because its probative value was substantially outweighed by unfair prejudice. *See* Ariz. R. Evid. 403. We disagree. The nature of both the arrest and the conviction were highly probative regarding Lopez's credibility. Further, defense counsel elicited the information about the California arrest and Colorado conviction, meaning the resulting prejudice was not unfair, and the trial court sufficiently mitigated whatever improper prejudice resulted by admonishing the jurors to consider it only for purposes of impeaching Lopez's credibility as a witness, not to consider it as evidence of guilt. The court did not abuse its discretion by allowing the admission of the information nor by allowing counsel to strategically "draw the sting." *See State v. Amaya-Ruiz*, 166 Ariz. 152, 167 (1990) ("The trial court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling absent a clear abuse of that discretion.").

**¶29** Likewise, the superior court's pretrial rulings about the out-of-state arrest and conviction were not an abuse of discretion under Arizona Rule of Evidence 404(b), as Lopez suggests. *See* Ariz. R. Evid. 404(b) ("[E]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character "in order to show action in conformity therewith[,]" but such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."); *State v. Jeffers*, 135 Ariz. 404, 417 (1983) ("The list of 'other purposes' in rule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts."). The evidence that Lopez was arrested in California for transporting drugs and convicted in Colorado for a similar offense was admissible to show her intent and to rebut her duress defense. *See State v. Linden*, 136 Ariz. 129, 140 (App. 1983).

## VI.  Drug Trafficker Profile Evidence

**¶30**　　Lopez challenges the trial court's admission of purported drug courier profile testimony and the prosecutor's use of this information during closing arguments. Lopez concedes that we review for fundamental error, which requires her to prove either error and resulting prejudice, or that the error "was so egregious that [s]he could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 140, 142, ¶¶ 12, 21.

**¶31**　　"A drug courier profile is a loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *State v. Lee*, 191 Ariz. 542, 544, ¶ 10 (1998). Our supreme court has condemned the use of profile evidence as substantive evidence of guilt. *See id.* at 545, ¶ 12 (noting that profile evidence creates "too high a risk" that a jury will convict a defendant "not for what he did but for what others are doing" (citation omitted)).

**¶32**　　We need not determine whether the challenged testimony constituted profile evidence improperly used to show Lopez's guilt. By proffering a duress defense, Lopez admitted she was trafficking methamphetamine. *See* A.R.S. § 13-412(A) ("Conduct [that] would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person . . . ."). That admission reduced the dispositive issue to whether the State proved, beyond a reasonable doubt, that Lopez was not compelled by the threat or use of immediate physical force to transport the methamphetamine found in the SUV. *See* A.R.S. § 13-205(A) ("If evidence of justification pursuant to chapter 4 of this title is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification."). Even if other evidence of her drug trafficking were improperly used at trial, it did not render the trial unfair or otherwise prejudice Lopez. As a result, she fails to show fundamental error.

## VII.  Prosecutorial Misconduct

**¶33**　　Lopez argues the prosecutor engaged in improper vouching when he asked the State's case agent the following:

> Q. What's the number one thing you're trained . . . to do when you testify?
>
> A. Review all your reports.

Q. What about in regards to the truth?

A. Oh, always be truthful.

*See State v. Vincent,* 159 Ariz. 418, 423 (1989) (Prosecutorial vouching occurs "(1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony.").

¶34 This exchange took place during rebuttal in direct response to questioning that occurred during cross-examination. Defense counsel questioned the witness asking, "So you've been trained on how to testify to a jury?" He answered, "Yes." Because the defense counsel's question raised a negative inference about the witness's credibility, the prosecutor was entitled to counter that inference. *See Pool v. Superior Court*, 139 Ariz. 98, 103 (1984) ("[W]here one party injects improper or irrelevant evidence, the 'door is open,' and the other party may retaliate with evidence on the same subject."). When a defendant opens the door to infer a fact in the negative, a prosecutor may negate that inference directly. *See State v. Granados*, 235 Ariz. 321, 329, ¶ 34 (noting that prosecution was entitled to rebut negative inference "created . . . from [defense counsel's] own questioning"). As a result, this exchange was not vouching. No prosecutorial misconduct or error occurred.

**CONCLUSION**

¶35 For these reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: HB