NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEON ROBERTSON, *Appellant.*

No. 1 CA-CR 23-0520
FILED 03-13-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-104931-001
The Honorable Sunita Cairo, Judge

**AFFIRMED**

APPEARANCES

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

Leon Robertson, Eloy
*Appellant*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

---

**G A S S**, Chief Judge:

**¶1**   Leon Robertson filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Robertson's counsel certified he found no arguable, non-frivolous question of law. Counsel thus believes the appeal has no merit. *See State v. Clark*, 196 Ariz. 530, 537–38 ¶¶ 30–31 (App. 1999). Counsel asks the court to search the record for any arguable issues. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *State v. Thompson*, 229 Ariz. 43, 45 ¶ 3 (App. 2012). The court accepted Robertson's supplemental brief.

**¶2**   Robertson's conviction and sentence are affirmed without the need for further briefing.

**FACTUAL AND PROCEDURAL HISTORY**

**¶3**   The court views the facts in the light most favorable to sustaining the conviction and resolves all reasonable inferences against Robertson. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). The court will not reweigh the evidence. *State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶4**   An officer observed Robertson driving 60 miles per hour in a 35 mile-per-hour speed zone. The officer confirmed Robertson's speed with a radar gun. The officer activated his body-cam before interacting with Robertson.

**¶5**   When the officer approached Robertson's vehicle, Robertson immediately told the officer he had a suspended license. The officer then asked Robertson if he had any weapons. Robertson said he did not. The officer then asked Robertson for his identification. Robertson told the officer it was in his fanny pack in the back seat. When Robertson opened the fanny pack to retrieve his identification, the officer saw a "silver colored object," which the officer suspected was a gun. The officer again asked Robertson if he had a weapon. And this time, Robertson said he had a gun.

¶6　　As a result, the officer had Robertson exit the vehicle. Robertson then told the officer he needed to make a phone call because he was going to jail. When the officer asked why, Robertson told the officer he was "an ex-con." At that point, the officer told Robertson he could not leave and advised Robertson of his *Miranda* rights. Robertson continued to talk with the officer, saying he worked in security and needed the gun for protection. Robertson also told the officer he bought the gun off the street.

¶7　　After a second officer arrived, Robertson called his employer. The second officer's body-cam recording captured that conversation. Robertson can be heard thanking his employer for giving him the opportunity and telling his employer he was in trouble for being a prohibited possessor.

¶8　　The State charged Robertson with misconduct involving weapons while being a prohibited possessor, a class 4 felony. *See* A.R.S. § 13-3102.A.4, .M. At trial, both officers testified, and the State, without objection, introduced both body-cam recordings of the stop and the later interactions at the scene. Robertson testified and acknowledged he was a prohibited possessor. He also acknowledged having a gun in the car when the officer stopped him. The jury found Robertson guilty.

¶9　　Robertson has a significant criminal history. His past convictions, beginning in 1991, include: possession of narcotic drugs for sale, a class 3 felony; possession or use of narcotic drugs, a class 4 felony; sale or transportation of narcotic drugs, a class 3 felony; sale or transportation of narcotic drugs, a class 3 felony; and misconduct involving weapons, a class 4 felony. The superior court sentenced Robertson as a category 3 repetitive offender, imposing a less-than-minimum sentence of 7 years. The superior court imposed a term of community supervision, and credited Robertson with 37 days presentence incarceration.

¶10　　The court has jurisdiction over Robertson's timely appeal under Article VI, Section 9, of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033.A.1.

## DISCUSSION

¶11　　Robertson's counsel says he diligently searched the record and identified no arguable question of law. In his supplemental brief, Robertson raises several issues:

1. Was the traffic stop for speeding unlawful because the officer did not issue a citation?

3

2. Was the officer's search of Robertson's vehicle unlawful?

3. Did the officer timely advise Robertson of his *Miranda* rights?

4. Does A.R.S. § 13-3102.B's exception for weapons stored in luggage apply to Robertson's fanny pack, and is the term "luggage" unconstitutionally vague?

¶12        Because Robertson's trial counsel raised none of the issues before the superior court, the court reviews for fundamental error. When a defendant objects at trial, the court conducts a harmless error review in which the State bears the burden "to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Strong*, ___ Ariz. ___, ___ ¶ 45, 555 P.3d 537, 553 (2024) (quoting *State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005)). "Conversely, for issues not properly objected to at trial, we review for fundamental error only." *Id.* (citing *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018)).

¶13        For fundamental error, "a defendant must establish both that fundamental error occurred and that it caused [the defendant] prejudice (though showing the former may establish the latter)." *Id.* (quoting *State v. Johnson*, 247 Ariz. 166, 185 ¶ 41 (2019)). Fundamental error must go "to the foundation of the case, take[] away from the defendant a right essential to [the defendant's] defense, or [be] of such magnitude that the defendant could not have possibly received a fair trial." *Id.* In assessing the alleged prejudice, the court reviews "whether, without the error, a reasonable jury could have reached a different result, even if substantial evidence of guilt exists." *Id.* (quoting *Escalante*, 245 Ariz. at 144 ¶ 34).

¶14        We address each issue in turn.

**I.        Reasonable suspicion supports the officer's traffic stop, even if the officer did not cite Robertson for the traffic violation.**

¶15        Robertson argues the officer did not have probable cause to stop him, in part because the officer did not cite him for speeding. His arguments fail.

¶16        To begin, Arizona law does not require an officer to issue a traffic citation during every traffic stop. Instead, officers have the authority to stop a driver for an actual or suspected traffic violation. *See* A.R.S. § 13-3883.B. And once an officer stops the driver, the officer has the discretion to decide whether to issue a citation. *See id.* For that reason, the

State need not prove the officer cited Robertson as an element of showing the officer had a basis to stop him. At best, an officer's decision to refrain from issuing a traffic citation is but one consideration to evaluate the officer's basis for the stop.

¶17 Next, the officer did not need probable cause to stop Robertson. Instead, to make a stop, an officer must have "reasonable suspicion" to believe an offense occurred. *See State v. Starr*, 222 Ariz. 65, 69 ¶ 11 (App. 2009) (relying on *Arizona v. Johnson*, 555 U.S. 323, 326 (2009) and *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). Robertson fails to argue the officer did not have a reasonable suspicion to believe Robertson violated the speed limit.

¶18 Even so, we address the officer's reasonable suspicion. Reasonable suspicion has no exact definition. Instead, as the Arizona Supreme Court explained, it is a "commonsense, nontechnical concept[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *State v. Rogers*, 186 Ariz. 508, 511 (1996) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). "The officer must be able to articulate the reasons, 'based on the totality of the circumstances,' that suggest a traffic violation has occurred." *State v. Alvarez-Soto*, ___ Ariz. ___, ___ ¶ 10, 559 P.3d 637, 640 (App. 2024) (quoting *State v. Teagle*, 217 Ariz. 17, 23 ¶ 20 (App. 2007)). From the perspective of "an objectively reasonable police officer," the court considers "both objective factors and surrounding circumstances, including the officer's relevant experience, training, and knowledge." *Id.* (cleaned up).

¶19 Here, sufficient evidence shows the officer had a reasonable suspicion to stop Robertson. "An officer who has observed a traffic violation has reasonable suspicion to initiate a traffic stop." *State v. Majalca*, 251 Ariz. 325, 328 ¶ 12 (App. 2021) (citation omitted). The officer observed Robertson speeding and stopped him. The officer's radar gun showed Robertson was traveling at 60 miles per hour in a 35 mile-per-hour speed zone. It is a class 3 misdemeanor to exceed a posted speed limit by more than 20 miles per hour. A.R.S. § 28-701.02.A, .B. And contrary to Robertson's argument, the officer was not required to cite Robertson for the alleged traffic violation. *See* A.R.S. § 13-3883.B.

¶20 At bottom, the officer had reasonable suspicion to stop Robertson for a routine traffic stop. The officer's reasonable suspicion did

not dissipate simply because the officer exercised his discretion and did not issue a citation. Robertson's arguments on these points do not suggest error, let alone fundamental error.

## II.     The officer had reasonable suspicion to search the vehicle.

**¶21**     Robertson argues the officer did not have reasonable suspicion to search his vehicle for weapons, violating his Fourth Amendment rights protected under *Terry v. Ohio*, 392 U.S. 1 (1968). "The Fourth Amendment protects against unreasonable searches and seizures," and "[a]n investigatory traffic stop is a seizure under the Fourth Amendment." *Majalca*, 251 Ariz. at 328 ¶ 12. Under *Terry*, an officer may stop and search a vehicle if the officer has a reasonable suspicion the suspect is armed with a deadly weapon. *See* 392 U.S. at 27. As above, the court assesses the officer's reasonable suspicion under a totality of the circumstances as a "commonsense, nontechnical concept" and considers everyday life's "factual and practical considerations." *Rogers*, 186 Ariz. at 511.

**¶22**     Robertson voluntarily told the officer he had a gun but only after previously telling the officer he did not. His later admission, alone, gave the officer reasonable suspicion. And the officer saw what he thought was a gun in the fanny pack. Robertson gave the officer even more grounds to be suspicious when Robertson acknowledged being a felon and a prohibited possessor.

**¶23**     The officer acted in accordance with *Terry* by taking "necessary measures to determine whether [Robertson was] in fact carrying a weapon." *Terry*, 392 U.S. at 24. This was not an impermissible *Terry* stop. Robertson's argument and the evidence establishes no error. Indeed, it establishes the officer had reasonable suspicion to search Robertson's vehicle for a weapon.

## III.    Introduction of Robertson's statements before he received a *Miranda* warning did not violate his right against self-incrimination.

**¶24**     Robertson argues the officer violated his right against self-incrimination because the officer did not timely advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The superior court, without objection, allowed the State to introduce his statements to the officer before the officer gave Robertson his *Miranda* warning.

¶25       True enough, evidence obtained in violation of *Miranda* is inadmissible. But police need not give a *Miranda* warning while performing a routine traffic stop if the person being questioned is (1) briefly detained and (2) in a public area that is not police dominated. *See Berkemer*, 468 U.S. at 437–40; *see also State v. Castellano*, 162 Ariz. 461, 463 (App. 1989). In assessing this argument, the court considers the testimony and evidence, including the video evidence from the officers' body-cams.

¶26       Here, the record shows Robertson made the statements during a routine traffic stop. The officer detained Robertson for just over 20 minutes before the officer took Robertson into custody. During that time, Robertson was in a public area, on the side of a road, without police domination. Robertson was not entitled to a *Miranda* warning before the officer told him he was not free to leave and taken into police custody. The superior court did not err, let alone fundamentally err, when it allowed the State, without objection, to admit his pre-*Miranda* statements. Robertson made those statements without being coerced or prompted. Indeed, early on, he quickly and voluntarily told the officer he was going to jail because he was a prohibited possessor and asked to use the phone to call his employer.

¶27       On this issue, Robertson again fails to identify error, let alone fundamental error.

**IV.**     **Robertson does not dispute he was a prohibited possessor, so his arguments about the luggage exception in Arizona's misconduct involving weapons statute do not affect his conviction and sentence.**

¶28       Robertson argues his conviction cannot stand because his fanny pack falls under A.R.S. § 13-3102.B.3(d)'s luggage exception. He, alternatively, argues the term is unconstitutionally vague and violates his due process rights. But that exception applies just to violations under paragraph A.2, which makes it unlawful for a person to "carry[] a deadly weapon except a pocket knife concealed on his person or concealed within his immediate control in or on a means of transportation if the person is under twenty-one years of age."

¶29       But Robertson was not charged and convicted under paragraph A.2. Instead, Robertson was charged and convicted under paragraph A.4, which applies to a person who is a prohibited possessor. Robertson does not dispute he was a prohibited possessor. Indeed, the evidence at trial shows he acknowledged his status as a prohibited

possessor to the arresting officer and to his employer in a phone call at the scene. And he took the stand and testified to that point before the jury.

¶30        Because the luggage exception does not apply to Robertson's offense, we do not address whether his fanny pack constituted "luggage" under the exception or whether the exception's terms are unconstitutionally vague.

¶31        Even so, Robertson's alternative argument—a fanny pack is "luggage"—also fails on the merits. The court previously ruled the luggage exception does not apply to fanny packs. *See State v. McDermott*, 208 Ariz. 332, 335 ¶ 10 (App. 2004). In *McDermott*, the court concluded the legislature intended to exclude packs from the luggage exception. *Id.* at 335 ¶¶ 8–9. And *McDermott* rejected similar void for vagueness arguments and concluded the term luggage was constitutionally sound. *Id.* at 336 ¶¶ 13–14.

## V.    Beyond the issues Robertson raised, the court read and considered counsel's brief, fully reviewed the record for arguable, non-frivolous error and identified no such error.

¶32        All proceedings complied with the Arizona Rules of Criminal Procedure. The superior court properly empaneled 8 jurors and 1 alternate. *See* A.R.S. § 21-102.B. The record shows no evidence of jury misconduct. The court properly instructed the jury on the elements of the charged offense, the State's burden of proof, and Robertson's presumed innocence. Robertson was present and represented by counsel at all stages of the proceedings. *See State v. Bohn*, 116 Ariz. 500, 503 (1977); *State v. Conner*, 163 Ariz. 97, 104 (1990). The superior court held appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's unanimous verdict.

¶33        Robertson had a chance to speak at sentencing. *See* Ariz. R. Crim. P. 26.9 (requiring defendant's presence at sentencing); 26.10(c)(1) (allowing defendant to speak). Robertson's sentence falls within the range prescribed by law, with proper credit given for presentence incarceration.

**CONCLUSION**

**¶34** We decline to order further briefing and affirm Robertson's conviction and sentence.

**¶35** After the filing of this decision, defense counsel's obligations pertaining to Robertson's representation in this appeal will end. Unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review, defense counsel need only inform Robertson of the outcome of this appeal and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).

**¶36** The court, of its own accord, grants Robertson 30 days from the date of this decision to file an *in propria persona* motion for reconsideration. *But see* Ariz. R. Crim. P. 31.20 (allowing 15 days to file a motion for reconsideration). Robertson has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review or, if Robertson files a timely *in propria persona* motion for reconsideration, he has 15 days after the motion is decided. *See* Ariz. R. Crim. P. 31.21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR